IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PATRICIA DAVIS                                                                                              PLAINTIFFS

V.                                                                         CIVIL ACTION NO. 4:21-CV-167-DMB-DAS

UNITED STATES OF AMERICA and
MAGIC TOUCH JANITORIAL SERVICE, INC.`                                   DEFENDANTS

## ORDER DENYING MOTION TO DISQUALIFY

This matter is before the court on the motion of the defendant, Magic Touch Janitorial, Inc., to disqualify Britt Virden as counsel for the plaintiff. Virden was the plaintiff's employer when Davis fell and was injured in a Greenville, Mississippi post office, and Davis still works for Virden. The fall is the subject of this action. The defense claims that Virden is a necessary witness in this action and therefore must be disqualified from acting as Davis' advocate at trial.

Part of Davis' claim for damages arises from the surgical repair of a rotator cuff tear performed by orthopedic surgeon, Dr. Larry Fields on August 19, 2019. According to Fields' records, at her September 16, 2019 visit, the doctor anticipated Davis would be able to return to light duty and released her to return to work as of October 30, 2019. On her return to work she was not to use her right arm. However, Fields' notes related to her October 11, 2019 visit indicate Davis had already returned to work ahead of this visit. While Fields notes Davis is doing well, this entry contradicts Davis' testimony at her June 21, 2023 deposition when she testified she thought she returned to work on October 30, 2023.

Dr. Fields testified that non-compliance, given the very large tear he had repaired, could be problematic because of the time needed to heal and because overuse could lead to a failure of the surgical repair. Fields' records, however, do not note any such complication in fact occurred.

Seizing on the seeming conflict between Davis' testimony about her return to work and her doctor's records, the defendant argues it is necessary for them to depose Virden and call him as a trial witness to testify about Davis' early return to work; her ability to work before and after surgery; her ability to use her arm before and after the surgery; whether she complained of pain; and whether and how she was compensated for time missed.[1] The defendant claims this testimony is now needed based on the failure of the Virden law firm to provide leave and payroll records. They also claim Virden's testimony became necessary because Dr. Fields indicated both that Davis returned to work before he released her and because of his testimony about the need to add activities back slowly to allow sufficient time for the substantial repair to heal.

The plaintiff in response argues that she has now responded to the discovery and confirmed that she will not be seeking any lost wages. The plaintiff argues there is no need to disqualify counsel, take his deposition, call him as a witness in the matter, nor delay the trial of this cause.

## **THE LAW**

The defendant urges the court to find Virden is a necessary witness and must be disqualified as counsel, per Rule 3.7 of the Mississippi Rules of Professional Conduct. The local rules make Mississippi's rules of conduct applicable to all attorneys appearing in the district courts in this

---

[1] The court notes that counsel for the plaintiff advised the defense not later than the plaintiff's June, 2023 that the plaintiff was not making a claim for lost wages.

2

state. L.U.Civ.R. 83.5. Mississippi's Rule 3.7 is identical to the ABA's Model Rules of Professional Conduct. *Liberty Mutual Ins. Co., v. Tedford,* 644 F.Supp. 2d 753 (N.D. Miss. Feb. 9, 2009). This rule provides, in pertinent part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

A party has a "proper objection where the combination of the roles may prejudice the party's rights in the litigation." Comment to Rule MS R RPC 3.7. The comments further acknowledge that,

> [P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer 's client." *Id.*

The ethical rules are designed to strike a balance between the competing interests of a client's right to choose counsel and the inconsistency of an advocate giving testimony. *Optyl Eyewear Fashion Int'l. Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985). It is "clearly contemplated that in some circumstances the balance would tip in favor of the client, and trial counsel would be permitted to testify" *Id.* If disqualification would work a substantial hardship on the client, the rule clearly allows an exception to the general rule that the attorney may not also appear as a witness.

## **NECESSARY WITNESS**

In this case, the court must determine whether Magic Touch has shown that Virden is a necessary witness and concludes that Magic Touch has failed to make the required showing. The court must consider both the significance of the testimony sought and should not disqualify an attorney if the evidence to be solicited from counsel is available from another source. The availability of other sources will mean that the attorney's testimony may not be necessary. *Liberty Mut. Ins. Co.*, 644 F.Supp. 2d 753, 766–69. The court finds that the defense has demonstrated little to no genuine need for Virden's testimony in this case and that Virden would not have reasonably anticipated a claim that he would be a necessary witness.

First, the court considers the attack by Magic Touch on the admissibility of any evidence concerning the shoulder repair surgery performed by Dr. Fields. Pending at the present time is the motion by Magic Touch for partial summary judgment and/or *Daubert* motion [Dkt. 129] which seeks to preclude any claim for "medical damages, shoulder surgery, further medical expenses related to the same, and any "temporary or permanent" limitations allegedly arising from the surgery claims or a *Daubert* motion excluding these issues from being presented to the jury for consideration." This motion is based on Fields' testimony that the tear he repaired would be very uncommon to result from a fall or other trauma.[2] While it remains to be seen whether

---

[2] Fields testified: The great minority of patients who have massive tears present with a traumatic injury. I would say 98 percent of patients who have a massive tear sustain that tear in the absence of a true traumatic injury. They present because they hurt, but they almost do so if she hypothetically had -- already had a tear, even a large tear, then her fall could have, you know, exacerbated symptoms she already had. Could have initiated symptoms she didn't have. Could have theoretically caused progressive tearing of an otherwise present tear. So there are a lot of scenarios that it could have been, but a true isolated massive tear in a 64-year old woman is exceedingly rare of traumatic origin in my practice.

4

the defense will prevail in this motion, that Magic Touch seeks to preclude any reference to the shoulder surgery is its representation to the court that everything related to the shoulder surgery is irrelevant to the litigation. If the doctor's testimony about the surgery should be found to be irrelevant as Magic Touch urges, the court cannot see any compelling reason for demanding that plaintiff's counsel should be disqualified as trial counsel and converted into a damages witness. This is particularly so given the absence of an articulated reason for believing Virden's testimony would be adverse to Davis; would contradict her testimony; or be helpful to the defense.

Nevertheless, the court recognizes that regardless of the *Daubert* motion, Magic Touch must be prepared to meet the proof about the shoulder injury, surgical repair and other treatment. For that reason the court also has considered other evidence in the record that indicates Magic Touch's previous lack of interest in scrutinizing Davis' post-surgical activity. Magic Touch has had Fields' records since November 16, 2022. The doctor's notes lay out the possibility that Davis went back to work before Fields released her. Nevertheless, when Davis testified in her deposition that she believed she returned to work on October 31, 2019, Magic Touch asked no follow up question about the conflict with Fields' notes. Nor were there any questions to Davis about Fields' post-surgical instructions. The defense posed no questions to her about whether she obeyed her doctor's directives. Davis was not asked about her activities and what she did to limit her activities on her return to work. In fact, when Davis was asked about wearing a sling and how long she continued to wear it, she volunteered, "Yes, I want to say I was still wearing it [the sling]. I just don't remember for how long, but I know I was still wearing it, because I remember trying and having to do my keyboard like this (indicating) because I couldn't really

5

reach it. And it was—it was kind of painful to do, but I did it." (Davis deposition 87-88). The defense did not follow up with further questions about her physical activities at home or at work.

The court finds the failure to inquire about Davis' activities in her deposition compelling. While Virden will no doubt have some knowledge about Davis' activities and limitations in the workplace, if this evidence were truly crucial to the defense, the best source of this information is Davis herself, and the defense chose not to pursue discovery in this area.

Additionally, there are other witnesses who can testify to Davis' activities during this time-period. Davis testified that she has a sister who lives in town, who took time off to care for her after her surgery, and checked on her from time to time later in her recovery. Davis also said that she talked to this sister and that she knew "all about" what she had been through. Furthermore, Davis testified she was doing physical therapy three times a week when she initially returned to work and then reduced to two sessions per week during her physical therapy. These professionals and their records would not only likely have factual information about what physical activities Davis was performing, but also about any complaints of pain and expert information about her capabilities and limitations across the weeks of treatment. If there was any overuse that resulted in a setback in her recovery or damage to the site of the repair, these professionals would be much better proof than Virden or any other witness on the question of Davis'compliance and the impact of any lack of compliance. Regardless, the defense has shown no apparent interest in pursuing these other witnesses.

Finally, on the question of Virden's potential testimony to the defense, the court reiterates that Fields' concern voiced at the deposition was that his surgical repair could fail. There is no proof that there was such a post-surgical complication in Fields' testimony or records.

6

In *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 265–67 (5th Cir. 2001), the Fifth Circuit affirmed the trial court's refusal to disqualify the plaintiff's attorney though the defense argued he was a necessary witness. Horaist sued the defendants for sexual harassment after repeated unwelcome sexual advances from several officers at the hospital. At the time the harassment was ongoing, Horaist was dating Andre Tocé who would go on to represent her in the suit after their dating relationship ended.

The defense sought to disqualify Tocé claiming he was a necessary witness because Horaist did not tell Tocé about the harassment while they were dating. The defense claimed he was a necessary witness on the issues of liability and damages for emotional distress, in part because the plaintiff had discussed problems in her relationship with the lawyer with her therapist. The defense thought the fact that Horaist did not tell Tocé about the harassment when it was occurring was adverse to her. They also wanted to compel the attorney to testify about her earnings from the businesses she started after being discharged and about her emotional state.

The Fifth Circuit noted: " If a lawyer must testify adversely to a client's interest, the client cannot waive the conflict, *Horaist,* 255 F. 3d at 266, *citing FDIC v. United States Fire Ins. Co.,* 50 F.3d at 1317 (5th Cir. 1995). "But, if a lawyer discovers during litigation that he "may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony would prejudice his client." *Horaist,* 255 F. 3d at 26 (citing Model Rules of Prof'l Conduct 3.7(c); La. Rules of Prof'l Conduct 3.7(c)). Such testimony would become prejudicial only if so adverse to the client as to give rise to a desire by the client to discredit the testimony. The Fifth Circuit held that the defense had failed to articulate how Tocé's testimony would prejudice his client.

7

The Fifth Circuit further held that Toce´ was simply not a necessary witness. As to all of the elements to which the attorney could testify, other witnesses and evidence was available addressing the same information. The court noted Horaist could testify to her relationship with Toce´ and to the fact that she had not told him about the harassment. Her co-workers could testify to her behavior around her harassers. Her business records could establish her lost wages and her psychologist, family, friends, and former co-workers could testify to her emotional state. The Fifth Circuit held because the attorney's potential testimony was cumulative, he was not a necessary witness. He was, therefore, not subject to disqualification. Furthermore, the court added that if the attorney's participation as witness and advocate stood only to prejudice the client, "the opposing attorney should have no say in the matter." *Horaist,* 255 F.3d. at 267.

As with *Horaist*, other evidence and testimony regarding Davis' compliance or lack thereof, means that the defense may not disqualify Virden.

## **PREJUDICE TO THE CLIENT**

The court must also weigh in the balance, Davis' interest in allowing Virden to continue his representation. The court finds that Davis' interest in having the attorney who has handled the case through dispositive motions far outweighs any interest of the defendant in calling her counsel as a witness.

The court notes that the application to disqualify Virden was made very late in the litigation. The defense does not claim that it was unaware of the employment relationship between the plaintiff and her counsel. Had the motion come earlier, the plaintiff would have been in a better position to obtain alternate counsel. However, when it filed the present motion, Magic Touch had already filed its dispositive motion and the discovery deadline had already

8

expired. Attorneys are understandably hesitant to undertake the rigors of trying a case when they have not played any part in developing the proof. The time commitment involved in evaluating a case at this stage of the litigation would dissuade many attorneys from considering representation at all. Not only would disqualification so late in the litigation deprive Davis of counsel of her choice, but given both the stage of the litigation and the level of difficulty intrinsic in establishing liability in slip and fall cases, disqualifying Virden at this juncture raises the specter of depriving Davis of any counsel. Of course, the possibility of being compelled to continue *pro se* would be profoundly prejudicial to Davis.

## **CONCLUSION**

The court has considered the cumulative nature of any testimony by Virden. It also has considered the defendant's attenuated claim of relevance of that testimony and the availability of other witnesses who can testify to the same inquiries. It has considered the lack of prejudice to the defense in being denied any testimony from Virden and the absence of any indication that Virden's testimony would be favorable to the defense. Finally, the court has considered the serious prejudice that would result to Davis in this matter if she is deprived of counsel of her choice at this juncture in the litigation. Accordingly, the court finds the motion to disqualify Britt Virden should be DENIED.

**SO ORDERED** this the 18th day of January, 2024.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE